CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff,

v.

STERLING NATIONAL BANK & TRUST COMPANY, Defendant.

STERLING NATIONAL BANK & TRUST COMPANY, Third-Party Plaintiff,

v.

Jules J. HESSEN, as Trustee of Teltronics Services Inc. and L.M. Ericsson Telecommunications Inc., Third-Party Defendant.

No. 81 Civ. 3855 (MEL).

United States District Court, S.D. New York.

June 15, 1983.

Kelley, Drye & Warren, New York City, for plaintiff.

Winick & Rich, P.C., New York City, for defendant; Susan G. Rosenthal, Jeffrey N. Rich, Fredric B. Katz, New York City, of counsel.

LASKER, District Judge.

This action arises from a stop payment order on three checks, which, apparently as a result of clerical error, did not get "stopped." The payee, Teltronics Services, Inc. ("Teltronics") is now in bankruptcy, and the payor's bank, Continental Illinois National Bank and Trust Company of Chicago ("Continental") brings this action against Teltronics' bank, Sterling National Bank & Trust Company ("Sterling") to recover the funds in question, which totalled $61,057.

The pertinent facts are undisputed. The fateful checks were drawn by Borg-Warner Leasing on its account at Continental on February 28, 1979. The checks were made payable to Teltronics, which deposited them in its account at Sterling on March 2, 1979. The same day, Borg-Warner requested that Continental stop payment on the checks. In accordance with ordinary banking procedure, Sterling sent the checks through the Federal Reserve banking system to Continental for payment. Continental dishonored the checks on March 6, 1979 by refusing payment and sending the checks back through the Federal Reserve system to Sterling.

All was well until the Federal Reserve Bank of New York ("FRB–NY") routed the checks to the wrong bank. As a result, Sterling did not receive the dishonored checks until March 14th, which is undisputedly past the so-called "midnight deadline", the time by which FRB–NY was required to notify Sterling of the dishonor. N.Y.U.C.C. § 4–212(1) (McKinney 1964). However, although Sterling did not receive the dishonored checks until March 14th, they did receive telephonic notice of the dishonor on March 8th, which the parties agree is within the midnight deadline, although they disagree as to whether telephonic notice is adequate.

Upon receipt of the returned checks, Sterling issued an "Affidavit of Late Return," also referred to as a "Challenge," which states that the checks were returned after the midnight deadline. Sterling sent the checks back to the FRB, which returned them to Continental.

Continental received Sterling's Challenge on March 22, 1979. On June 7, 1979, Continental responded to the Challenge with a "Letter of Disclaimer", in which it denied

responsibility for the late return of the checks to Sterling.

On September 18, 1979, Teltronics filed a Petition under Chapter 11 of the Bankruptcy Act, and on May 29, 1980 Sterling was directed by order of the Bankruptcy Court to turn over to the Bankruptcy Trustee all of the funds in Teltronics' account, which, on that date, totalled $89,686.81 (the "turnover order"). A copy of the turnover order was sent to Continental's main office, and received in Continental's legal department on June 5, 1980. Continental never filed a claim with the Bankruptcy Court to recover funds from the Teltronics estate.

On June 17, 1981, Continental filed this action to recover the funds for the three checks, which Continental had been required to credit to its customer, Borg-Warner Leasing.[1]

Sterling and Continental cross-move pursuant to Fed.R.Civ.Pr. 56 for summary judgment. Continental asserts that it is entitled to the funds because, in a timely and proper fashion, it satisfied all of its obligations to effectively dishonor the checks.

Sterling concedes that Continental properly dishonored the checks (Sterling Reply Memorandum of Law at 2). However, Sterling contends: (a) that it was entitled to use the "Challenge" procedure because it did not receive timely *written* notice that the checks had been dishonored; and (b) that Continental is estopped from asserting its claim because (i) its Letter of Disclaimer in response to Sterling's Challenge was not timely issued, and (ii) it failed to assert a claim for the funds with the Teltronics Bankruptcy Trustee.

**A.** *Did Sterling Receive Timely Notice of Dishonor?*

■ The parties vigorously dispute whether Sterling received timely notice of dishonor (in particular, whether telephonic notice of dishonor is adequate) and whether, even if Sterling had not received timely notice, it was entitled to use the Challenge procedure.

These arguments miss the point. First, even if the notice received by Sterling was untimely, that was concededly the fault of FRB–NY, which misrouted the checks, and in no way attributable to Continental, which Sterling concedes acted in a proper and timely fashion in dishonoring the checks. Sterling has not advanced any reason why FRB–NY's error should be chargeable to Continental, nor has it responded to Continental's assertion that Sterling could and should have sought recourse against FRB–NY.

Moreover, the parties agree that the Challenge procedure is simply that: a *procedure* by which one bank may challenge another bank's refusal to honor checks. (Sterling's Reply Memorandum at 3; Continental's Memorandum in Support of Summary Judgment at 20–24).[2] The Challenge procedure does not create any substantive rights; thus, even if it had been proper for Sterling to utilize the procedure, such an act would not alone give Sterling any substantive right to the funds.

Accordingly, we conclude that even if Sterling did not receive timely notice, the deficiency is not chargeable to Continental, which properly and timely dishonored the checks.

1. Sterling has filed a third-party complaint against the Trustee for indemnity and against L.M. Ericsson Telecommunications, Inc., a secured creditor of Teltronics, for a declaratory judgment that the creditor had no rights superior to the Trustee to the funds paid by Sterling to the Trustee. L.M. Ericsson has moved to dismiss for failure to state a claim and the Trustee has moved to amend his pleadings. Rulings on the third-party motions are deferred pending decision on the instant motions. (See letter of Jeffrey N. Rich, dated November 11, 1981, memorializing pre-trial conference of October 30, 1981).

2. The Challenge procedure is created by the Federal Reserve Bank's Operating Circular No. 17, ¶ 15 (Exhibit A to Continental Memorandum of Law in Support of Summary Judgment). It sets forth FRB procedure for handling dishonored items, and, by its express terms, does not provide standards for determining whether an item is or is not properly dishonored.

### B. *Estoppel*

■ 1. Under the operating rules of the FRB, Continental was allowed fifteen days from the date it received Sterling's Challenge to submit a Letter of Disclaimer contesting the Challenge. (FRB Operating Circular No. 17, ¶ 17). Continental received Sterling's Challenge on March 22, 1979, and did not submit a Letter of Disclaimer until June 7, 1979, well past the fifteen day deadline. Sterling argues that Continental is now estopped from claiming a right to the funds because, if it had timely filed its Letter of Disclaimer, it "would have been credited with the proceeds of the checks, the monies would never have been withdrawn, and this action would never have been necessary." (Sterling's "Answering Memorandum of Law" at 2).

It is undisputed that under the FRB rules Continental should have submitted its Letter of Disclaimer by April 7th and that, had it done so, Sterling would have been required to return the funds to Continental. (Sterling Answering Memorandum at 2). However, in order to demonstrate that Continental is *estopped* from asserting its rights to the funds on account of the late submission, Sterling must demonstrate that it has been *injured* by the untimeliness of the submission. Continental contends that Sterling was not harmed by the untimeliness of the Letter of Disclaimer because Sterling was no less able to credit Continental with the proceeds of the checks on June 7th than it was on April 7th.

Oral argument was requested on the question of how Sterling was prejudiced by the late submission of the Letter of Disclaimer. Counsel for Sterling argued that if Continental had filed its Letter of Disclaimer within 15 days, it would have been in accordance with "standard banking procedure" for Sterling to have gone to its customer to retrieve the funds; however, two months later a bank could no longer go back to the customer. Sterling does not argue that the customer no longer had adequate funds in the account to cover the checks. (In fact, when the Trustee took over the account nearly a year later, there were funds in excess of the amounts in question in the account.) Rather, Sterling relies on its counsel's view of "standard banking procedure." No affidavit from any individual with personal knowledge of standard banking procedure has been submitted in support of counsel's opinion. Under the circumstances,[3] we do not believe that an unsworn statement by counsel that "standard banking procedure" prevented Sterling from collecting the funds from its customer is sufficient to create an issue of fact.

■ 2. Sterling further argues that Continental is estopped from claiming the funds by its failure to put in a claim to the funds with Teltronics' Trustee in Bankruptcy. Sterling contends that Continental slept on its rights in failing to file a claim with the Trustee, and that, having failed to assert its rights in the bankruptcy proceedings, it is estopped from asserting them here.

Continental answers that it did not sleep on its rights because it never received adequate notice of the bankruptcy proceeding. The notice was sent to Continental's main headquarters, not to the pertinent branch, and failed to contain any information identifying Continental's customer. (The bankrupt, Teltronics, was Sterling's customer). We find persuasive Continental's argument that a bank the size of Continental cannot be deemed to have had actual notice of an available remedy where the only notice sent omits any reference to the name or account number of the bank's customer. Had Sterling considered it preferable for Continental to pursue its claim through the bankruptcy proceedings, it could have contacted the Continental personnel responsible for the account in question and notified them of the proceeding.

---

**3.** Counsel were advised in advance of the argument that the primary issue on which the Court wished to hear argument was the question of Sterling's damages, if any, as a result of Continental's untimely submission of its Letter of Disclaimer. No attempt has been made to supplement the record by admissible evidence of "standard banking procedure."

Accordingly, we conclude that Continental is not estopped from pursuing its claim against Sterling either on account of its tardiness in submitting a Letter of Disclaimer or by its failure to file a claim with the Trustee in Bankruptcy.

For the reasons stated above, Continental's motion for summary judgment is granted; Sterling's motion for summary judgment is denied.

It is so ordered.